

# IN THE
# TENTH COURT OF APPEALS

No. 10-13-00259-CV

CITY OF BRYAN/BUILDING AND
STANDARDS COMMISSION,

Appellant

v.

KENNETH CAVITT,

Appellee

From the 361st District Court
Brazos County, Texas
Trial Court No. 12-000858-CV-361

## MEMORANDUM OPINION

In one issue, appellant, the City of Bryan/Building and Standards Commission

(the "City"), challenges the trial court's denial of its plea to the jurisdiction. We affirm.

### I. BACKGROUND

Appellee, Kenneth Cavitt, owns property located at 608 North Sims Avenue in

Bryan, Texas. The City alleged in its plea to the jurisdiction that, at all relevant times, it

had adopted a Code of Building Ordinances. These ordinances set forth the standards utilized by the Building and Standards Commission ("BSC") to determine whether a building should be declared unsafe, ordered vacated, secured, repaired, removed, demolished, and/or the occupants relocated.

On June 19, 2011, appellee was sent a notice of a public meeting regarding this property. Specifically, the notice mentioned that the City was "aware of and inspected one or more dilapidated structures located on the above-referenced property" and that those structures were unsafe and in violation of the City's ordinances. Appellee was directed to attend the meeting scheduled for August 22, 2011, to present argument and evidence that his property is not dangerous or could be made safe. Additionally, appellee was instructed that he must provide the City with proof of the scope of any work required to repair the property.

Prior to the August 22, 2011 meeting, three different City employees—Code Enforcement Officer Sandra Willis, Chief Building Official Gregory Cox, and Fire Marshall Fred Taylor—inspected the property and found numerous dangerous conditions that were deemed to be a hazard to public health. Cox and Taylor both concluded that the property must be vacated, repaired, or possibly demolished. Each of the employees drafted reports documenting the condition of the property.

On July 29, 2011, appellee was sent a second notice informing him of the August 22, 2011 meeting. The minutes from the August 22, 2011 meeting reflected that the BSC

discussed appellee's property. Larry A. Berry, appellee's representative at the hearing, told the BSC that the property could be brought up to code and that appellee was willing to put up the money to pay for repairs; but appellee needed more time. In any event, the BSC accepted,

> **the City's recommendation that the property is a hazard to the health, safety, and welfare of citizens and ordered that the structure be secured and vacated within 30 days and a detailed plan for repair of the main structure be submitted at the Commission's next regular meeting on September 26, 2011.**

(Emphasis in original).

At the September 26, 2011 meeting, the BSC once again discussed appellee's property. As reflected in the minutes from this hearing, appellee attended this hearing with his architect, Glenn E. Cheeks. Appellee stated that he would like to be given the chance to repair the property. Cheeks noted that he had been retained as the architect for this project, but that he has been unable to deliver a plan for the repairs due to illness. When questioned about his intentions for the property, appellee stated that he would like to rent out rooms on the second floor of the property and possibly have "a little breakfast place on the first floor." The BSC informed appellee that the property was zoned for single-family residential use, not multi-family or commercial use. At the conclusion of the discussion, the BSC declared the property a hazard to the health, safety, and welfare of the citizens and ordered appellee to vacate the building within thirty days and repair the property within ninety days. Appellee was ordered to attend

each regularly scheduled BSC meeting to demonstrate compliance with the repair schedule.

On September 28, 2011, appellee was notified of the BSC's next meeting scheduled to occur on October 24, 2011. The notice referenced a copy of the BSC's findings and order pertaining to appellee's property. And interestingly, the notice stated that appellee has "the right to appeal the decision of the Building and Standard Commission to district court. A notice of appeal must be filed with the district court clerk within thirty (30) calendar days from the date the commission's order is mailed to you."

Thereafter, at the October 24, 2011 meeting, the BSC established a mandatory time schedule for repairs to appellee's property. Appellee was once again ordered to attend subsequent BSC meetings to update the commission about repairs made to the property.

At the subsequent November 28, 2011 meeting, the Chief Building Official stated that the property was in compliance with the time schedule; however, the BSC concluded that the Site Development Review Committee must be able to review an adequate site plan before November 30, 2011, so that the Planning and Zoning Commission could consider appellee's use of the property at its December 15, 2011 meeting. Apparently, the appropriate plans and reports were never submitted so that appellee could obtain the proper permits.

Later, at its February 27, 2012 meeting, the BSC learned that appellee was not in compliance with the time schedule. In fact, the BSC had not received any information from appellee since December 2011. Appellee's architect, Cheeks, attended the meeting and asked for more time. The BSC denied the request of Cheeks and ordered the demolition of the building on appellee's property within thirty days.

Appellee appealed the BSC's demotion order to the 361st Judicial District Court in Brazos County, Texas.[1] In this filing, appellee argued that the effect of the BSC's demolition order was to deny him "the use of his property and effectively results in a taking by the City of the property in [v]iolation of both [t]he United States Constitution, the Texas Constitution[,] and applicable State Law." The City responded by filing a plea to the jurisdiction, plea in abatement, special exceptions, a first amended answer, a jury demand, and affirmative defenses. In its plea to the jurisdiction, the City asserted that the evidence demonstrates that appellee does not have a takings claim because the property was determined to be a public nuisance. Additionally, the City contended that appellee's claim did not waive the City's sovereign immunity. In its plea in abatement, the City argued that appellee should be required to amend his petition to properly plead a violation of the Local Government Code, the Government Code, and/or Article I, Section 17 of the Texas Constitution and to show how the City's actions have violated his rights or caused an injury.

---

[1] The parties do not dispute the timeliness of appellee's appeal of the BSC's demolition order.

On July 29, 2013, the trial court conducted a hearing on the City's filing. At the conclusion of the hearing, the trial court denied the City's plea to the jurisdiction but granted the City's plea in abatement. Thereafter, the City filed its notice of accelerated, interlocutory appeal challenging the denial of its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2013).

## II. STANDARD OF REVIEW

A plea to the jurisdiction based on sovereign immunity challenges a trial court's jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). "A plea questioning the trial court's jurisdiction raises a question of law that we review de novo." *Id.*

In reviewing a ruling on a plea to the jurisdiction, we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiff and looking to the pleader's intent. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004)). If the pleadings neither affirmatively demonstrate nor negate jurisdiction, the plaintiff should be given an opportunity to amend the pleadings. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even when those facts may implicate the merits of the cause of action. *Id.* In considering this evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* If the

evidence creates a fact issue as to jurisdiction, then it is for the factfinder to decide. *Id.* However, if the relevant evidence is undisputed or fails to raise a fact question on jurisdiction, the plea to the jurisdiction is ruled on as a matter of law. *Id.* (citing *Miranda*, 133 S.W.3d at 228).

## III. ANALYSIS

In its sole issue on appeal, the City contends that the trial court erred in denying the City's plea to the jurisdiction because the evidence shows that the property in question was a public nuisance, and thus, there can be no unconstitutional taking. Moreover, the City argues that because appellee's property constituted a public nuisance, the trial court lacked jurisdiction to entertain appellee's appeal of the BSC's demolition order. We disagree.

"A maxim of takings jurisprudence holds that 'all property is held subject to the valid exercise of the police power.'" *City of Dallas v. Stewart*, 361 S.W.3d 562, 569 (Tex. 2012) (quoting *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex. 1984)). Accordingly, "the government commits no taking when it abates what is, in fact, a public nuisance." *Id.* Therefore, a finding that property is a public nuisance will generally be dispositive of a takings claim. *Id.* However, takings suits, such as the one filed here, are "fundamentally, *constitutional* suits, and must ultimately be decided by a court rather than an agency." *Id.* at 568 (emphasis in original). Before an agency's administrative nuisance determination will collaterally estop a takings claim, the Texas

Constitution requires independent, de novo review by a court. *Id.* at 569 ("Our precedents make clear that nuisance determinations must ultimately be made by a court, not an administrative body, when the property owner contests the administrative finding." (citing *City of Houston v. Lurie*, 148 Tex. 391, 224 S.W.2d 871, 874 (1949); *City of Texarkana v. Reagan*, 112 Tex. 317, 247 S.W. 816, 817 (1923); *Crossman v. City of Galveston*, 112 Tex. 303, 247 S.W. 810, 813 (1923); *Stockwell v. State*, 110 Tex. 550, 221 S.W. 932, 934-35 (1920))).

In *Stewart*, the Texas Supreme Court concluded that substantial-evidence review of the administrative board's nuisance determination, resulting in the demolition of a home, did not sufficiently protect the owner's rights under Article I, Section 17 of the Texas Constitution. *Id.* at 566.[2] The court held that the board's determination and the trial court's affirmance of it under a substantial-evidence review were not entitled to preclusive effect in a takings suit. *Id.* at 580-81.

Here, appellee has asserted a takings claim in the trial court, as permitted by section 214.0012(a) of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE

---

[2] Specifically, the *Stewart* Court stated that:

Today we hold that a system that permits constitutional issues of this importance to be decided by an administrative board, whose decisions are essentially conclusive, does not correctly balance the need to abate nuisances against the rights accorded to property owners under our constitution. In the context of a property owner's appeal of an administrative nuisance determination, independent court review is a constitutional necessity.

*City of Dallas v. Stewart*, 361 S.W.3d 562, 564 (Tex. 2012).

ANN. § 214.0012(a) (West 2008).[3] And the crux of the City's argument is that the BSC's finding that appellee's property constitutes a public nuisance estops appellee from challenging that finding in the trial court and, thus, deprives the trial court of subject-matter jurisdiction over appellee's takings claim. As stated earlier, the Texas Supreme Court has rejected this contention. *See Stewart*, 361 S.W.3d at 569; *see also Lurie*, 224 S.W.2d at 874; *Reagan*, 247 S.W. at 817; *Crossman*, 247 S.W. at 813; *Stockwell*, 221 S.W. at 934-35. Instead, the Texas Supreme Court emphasized that nuisance determinations must ultimately be made by a court, not an administrative body like the BSC, when appellee contested the BSC's demolition order. *See Stewart*, 361 S.W.3d at 569; *see also Lurie*, 224 S.W.2d at 874; *Reagan*, 247 S.W. at 817; *Crossman*, 247 S.W. at 813; *Stockwell*, 221 S.W. at 934-35. Because the City's plea to the jurisdiction sought to prevent appellee from obtaining judicial review of his takings claim by a court, under the above-mentioned Texas Supreme Court precedent and section 214.0012(a) of the Texas Local Government Code, we cannot say that the trial court erred in denying the City's plea to the jurisdiction. *See Holland*, 221 S.W.3d at 642; *Miranda*, 133 S.W.3d at 226-27; *see also*

---

[3] Section 214.0012(a) of the Texas Local Government Code provides the following, in pertinent part: "Any owner, lienholder, or mortgagee of record of property jointly or severally aggrieved by an order of a municipality issued under 214.001 may file in district court a verified petition setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality." TEX. LOC. GOV'T CODE ANN. § 214.0012(a) (West 2008). Moreover, section 214.001 of the Texas Local Government Code grants municipalities the authority to order "the vacation, relocation of occupants, securing, repair, removal, or demolition of a building" that is dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare, among other things. *See id.* § 214.001(a) (West Supp. 2013). Essentially, section 214.001 grants the BSC the power to order the demolition of appellee's property, and section 214.0012(a) grants appellee the right to challenge that order in district court. *See id.* §§ 214.001(a), 214.0012(a); *see also City of Houston v. Carlson*, 393 S.W.3d 350, 359 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

TEX. LOC. GOV'T CODE ANN. § 214.0012(a); *Stewart*, 361 S.W.3d at 569; *Lurie*, 224 S.W.2d at 874; *Reagan*, 247 S.W. at 817; *Crossman*, 247 S.W. at 813; *Stockwell*, 221 S.W. at 934-35.

Accordingly, we overrule the City's sole issue on appeal.

## IV. CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed May 8, 2014
[CV06]